GRIFFIN, J.,
dissenting.
I respectfully dissent.
This case is a little bit unusual because, as the majority explains, the rehabilitative plan envisioned at the time of the dissolution in 1992 largely succeeded. The plan was for Mrs. Pettry to obtain a nursing degree; and even though she instead received a degree in business, the evidence suggests that the income to be derived from her current occupation is roughly equivalent to that of a nurse. There is some doubt, however, that the amount of income to be derived from either occupation is that which was envisioned at the time of the original judgment. More important, the trial court manifestly granted the request for temporary alimony based upon the extensive evidence that was introduced concerning the state of Mrs. Pet-try’s mental health.
Dr. Deborah Day, a psychologist, testified on behalf of Mrs. Pettry. She testified that Mrs. Pettry had been in her care for several years and that she was currently under treatment for “major depression on Axis I, severe and recurrent in nature,” and “generalized anxiety disorder.” She testified Mrs. Pettry’s condition is so severe that she requires antidepressants and antianxiety medication. Even with medication, she is not able to function normally. According to Dr. Day, in the preceding two years, there had been a significant deterioration in Mrs. Pettry’s ability to function. Dr. Day went so far as to express that she was “amazed” that Mrs. Pettry was even able to go to work. She further testified that Mrs. Pettry has only $1,500 in mental health benefits but that she requires weekly sessions costing $160 per visit.
Although it is true that Mrs. Pettry was suffering mental health problems at the time of the 1992 dissolution, the plan envisioned in 1992 that she had the capacity to become fully self-supporting as a nurse and make a reasonable income if she was given the wherewithal to obtain a four-year degree. According to the testimony on which the temporary alimony decision was based, the deterioration in her mental health has been so significant that what was contemplated at the beginning of the rehabilitation alimony period has turned out to be a very different set of circum *12 stances.[1] It is not for this court to reweigh this evidence, which the trial court clearly believed, but rather, to determine whether the evidence is sufficient to support the trial court’s ruling. Just as it was within the trial court’s discretion at the outset to decide to award only rehabilitative alimony to Mrs. Pettry after fifteen years of marriage with the expectation that she could support herself, it is now equally within the discretion of the trial court to convert the rehabilitative award to a permanent award based on current circumstances. I would affirm.

. Since the dissolution, Mrs. Pettry has also been diagnosed by another physician as having "chronic fatigue syndrome.” The symptoms apparently were present prior to the dissolution but the condition was undiagnosed.